*178*

United States District Court
Southern District of Texas
FILED

MAR 0 8 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EDWARD J. SOKOLOSKY,          )
                              )
        Plaintiff,            )
                              )
    *vs.*                     )        CIVIL ACTION NO. B-98-131
                              )
LYDIA LIEDMAN,                )
                              )        JURY DEMANDED
        Defendant.           )
_____)

## DEFENDANT LYDIA LIEDMAN'S TRIAL BRIEF

COMES NOW,  Defendant Lydia Liedman and files this Trial Brief, and would respectfully show as follows:

The issue before the Court is if Plaintiff Edward Sokolosky and Defendant Lydia Liedman entered into a binding settlement agreement when Mr. Sokolosky's attorney sent a September 22, 2000 letter purporting to accept the offer made in a January 27, 2000 letter from Ms. Liedman's attorney.  Defendant Lydia Liedman submits that both as a matter of law and fact no binding contract was formed.  In support of this position, Ms. Liedman will present the testimony of William Gault, cross examination of E.R. "Randy" Fleuriet, documentary evidence, the stipulations of the parties, and the documents included in the Court's file in this matter.

### FACTUAL STATEMENT

On January 27, 2000, Liedman's attorney, William Gault, made an offer of $100,000 to settle this case in a written letter to Sokolosky's attorney, Randy Fleuriet.  The offer specifically recited that "This offer is being made pursuant the Rule 68 of the Federal Rules of Civil Procedure."    The letter's reference to Rule 68 shows that Mr. Gault (and, through him, his

CMPDF - www.festo.com

client) intended that the offer be accepted within ten days, as required by Rule 68. Mr.

Sokolosky, through his lawyer, Mr. Fleuriet, did not accept this offer within ten days.

More than eight months later, on September 22, 2000, Mr. Fleuriet purported to accept

this offer on behalf of Mr. Sokolosky, by writing a letter that stated the following:

> My client, Edward Sokolosky, accepts your client's offer to settle this case at
> $100,000 as stated in your January 2000 letter, copy attached. You may prepare
> the order of dismissal with prejudice and the full release and settlement of all
> claims as stated in your letter and present those to me along with a draft for
> $100,000.

Between these two writings, many significant events and communications occurred. Two

weeks after the offer was made, on or about February 14, 2000, at a deposition held in Mr.

Fleuriet's office, Mr. Fleuriet stated to Mr. Gault that he wanted to settle the case between Mr.

Fleuriet's previous offer of settlement for $1,295,000 and Liedman's offer of $100,000. Mr.

Fleuriet made clear that the settlement offer of $100,000 was not substantial enough.

Mr. Fleuriet also stated at that time that he wanted to negotiate the settlement directly

with the insurance adjuster or with Chris Siemans of St. Paul Insurance Company. Mr. Fleuriet

confirmed that he had made this request in a letter to Mr. Gault on October 5, 2000.

Between January 27, 2000 (when the offer was made) and September 22, 2000 (when the

offer was purportedly accepted), the circumstances of the litigation changed. Thirty-one

depositions over eighteen different days in eight different cities in five different states were

taken. Plaintiff's counsel, Mr. Fleuriet, attended each of those depositions. Ms. Liedman's

counsel also attended these depositions.

Also during this time, the Court held a hearing on Defendants' Motions for Summary

Judgment in March 2000. On August 30, 2000, the Court granted Liedman's motion for partial

summary judgment, dismissing Plaintiff's fraud claims and Plaintiff's claims of violation of §

32.46 of the Texas Penal Code. The Court also granted summary judgment to Defendant Dow

Jones & Company, Inc., finding that the article in *Barrons* that was the subject of the libel claims against Dow Jones and Richard Karp was not actionable as libel because it was a substantially true account of a court proceeding.

Finally, on September 19, 2000, Defendant Dow Jones & Co., Inc. sent Plaintiff a motion for judgment under Rule 54(b) and a draft bill of costs in excess of $160,000. Three days later, Plaintiff purported to accept Lydia Liedman's offer of $100,000.

**I.      THERE IS NO BINDING SETTLMENT AGREEMENT BECAUSE THE OFFER WAS BOTH WITHDRAWN AND REJECTED BEFORE ACCEPTANCE.**

The issue before the Court is whether a binding settlement agreement was entered into by Defendant Lydia Liedman (through her attorney William Gault) and Plaintiff Edward Sokolosky (through his attorney Randy Fleuriet).    A settlement agreement is a contract governed by state substantive law—in this case, Texas. *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986).[1]  The fundamental principles of Texas law, when applied to the interactions between attorneys Gault and Fleuriet, clearly show that no binding contract was entered into by the parties.

### A.  The settlement offer was not accepted within the explicit ten-day offer period.

Mr. Gault's letter of January 27, 2000 expressly states that the offer was made "pursuant to Rule 68 of the Federal Rules of Civil Procedure," which provides that an offer not accepted within 10 days is deemed withdrawn. This reference to Rule 68 clearly placed a ten-day time limit on the offer within which it had to be accepted.

---

[1] Although the Court has already observed that Plaintiff's offer did not meet the requirement of a "judgment" as contemplated by Rule 68, the Court may also take note that Rule 68 offers are interpreted under contract law principles. *See Medina v. Housing Authority of San Miguel County*, 974 F.2d 1345 (10th Cir.1992); *Lang v. Gates*, 36 F.3d 73, 75 (9th Cir.1994); *Webb v. James*, 147 F.3d 617, 620 (7th Cir.1998); *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir.1991);  *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir.1988); *Johnson v. University College of the Univ. of Alabama*, 706 F.2d 1205, 1209 (11th Cir.1983).

When a contract is made with reference to the performance of certain acts prescribed by a rule, the contract and the rule will be considered together and "the statute will become part of the contract." *Overton v. City of Houston*, 564 S.W.2d 400, 403 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).   For example, when a city employee's right to severance pay arises in a city ordinance, that ordinance would be read into any employment contract that references the ordinance. *Id.*   Similarly, where Mr. Gault referenced Rule 68 in his written offer, the Rule and its accompanying time limit are read into the written offer.

As master of the offer, Mr. Gault could dictate the time, place, and manner of acceptance of the offer. *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1986, no writ). Mr. Fleuriet was required to accept in the precise manner dictated in the offer. *Town of Lindsey v. Cooke County Elec. Coop. Assoc.*, 502 S.W.2d 117, 118 (Tex. 1973*); Abraham Investment Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 525 (Tex.App.—Amarillo 1998, writ denied).   Mr. Fleuriet ignored the precise time limit incorporated in the offer, instead attempting to accept over eight months later.   His failure to accept in the manner dictated in the offer, and after the time limit expired, means that no contract was formed.

### B.  Ms. Liedman withdrew the offer before acceptance.

A fundamental tenet of Texas contact law is that an offer may be revoked by the offeror at any time prior to acceptance. *Bowles v. Fickas*, 167 S.W.2d 741, 743 (Tex. 1943).   Even if the offer states a time period in which it must be accepted, as a matter of common law, the offer can be revoked prior to expiration of the offer period in the absence of consideration. *Echols v. Bloom*, 485 S.W.2d 798, 800 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

Revocation can be made expressly, or through conduct inconsistent with the offer. *Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947).   In this case, revocation was made both

expressly by Mr. Gault's letter, and also through conduct inconsistent with the offer through continuing the litigation efforts of Mr. Fleuriet and Mr. Gault.

Mr. Gault's letter, by its reference to Rule 68, incorporated the automatic withdrawal provisions of this rule ("An offer not accepted shall be deemed withdrawn..."). Pursuant to Rule 68, then, the offer was automatically withdrawn when it was not accepted within ten days. Even after the offer was withdrawn automatically, the parties, through their attorneys, continued to act in a manner inconsistent with the continuation of the offer, as if the case would not settle.

Plaintiff claims that there was no written withdrawal of the offer and that an implied or verbal withdrawal is ineffective. This is wrong both legally and factually. It is factually incorrect because the January 27, 2000 letter, in its reference to Rule 68, contained a written withdrawal if not accepted within 10 days. It is legally wrong because it is clear that a written offer can be withdrawn or revoked through oral communications or through conduct inconsistent with the offer. *See* JOSEPH PERILLO, CORBIN ON CONTRACTS §2.19 (1997)("there is no general requirement that the revocation of a written offer be in writing."); *see e.g. Antwine v. Reed*, 199 S.W.2d 482, 486 (Tex. 1947)(no contract when offeror orally stated after making written offer that the offered real estate was "off the market" before acceptance); *Echols v. Bloom*, 485 S.W.2d 798, 801 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.)(no contract when offeror verbally withdrew written offer by telephone prior to oral acceptance). As the master of the offer, Mr. Gault was entitled to withdraw the offer at any time before acceptance, in any manner sufficient to give notice. The evidence shows that he did.

### C. No contract was formed because the offer was rejected when a counteroffer was made, thus there could be no acceptance.

Under Texas law, acceptance must be identical to the offer to make a binding contract. *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). Any material change in a proposed contract constitutes a counter-offer, which acts as a rejection of the

offer. *Id.* Once an offer is rejected, it is terminated and cannot then be accepted. *Harris v. Mickel*, 15 F.3d 428, 431 (5th Cir. 1994). There will be evidence that Mr. Fleuriet's response to the $100,000 offer was a counteroffer to settle between the amounts of $100,000 and his initial demand of $1,295,000. Since Mr. Fleuriet's counteroffer differed in a material term—the amount of the settlement—the counteroffer rejected and terminated the January 27 offer.[2]

In his affidavit and correspondence, Fleuriet emphasizes that he never rejected Mr. Gault's offer in writing and never made a counteroffer in writing. This distinction between written and oral counteroffers is irrelevant. A counteroffer can be made orally; under Texas law, oral offers are valid to the same extent as written offers. *See Aboussie v. Aboussie*, 441 F.2d 150, 154 (5th Cir. 1971)(parties can make contracts in "writing and leave others to oral expression and still others to partially oral and partially written form."); E. ALLAN FARNSWORTH, CONTRACTS §3.10 (1999)(an offer "may be made by spoken or written words or by other conduct."). For example, Texas courts have found no contract where a potential employee made a written offer by fax, and an employer made an oral counteroffer by telephone. *See CRSS Inc. v. Runion*, 992 S.W.2d 1, 5 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The fact that Fleuriet's counteroffer was not made in writing is simply immaterial.

## II. PASSAGE OF TIME, CHANGE OF CIRCUMSTANCES, AND CONDUCT OF PARTIES MADE IT UNREASONABLE TO THINK THAT THE OFFER WAS STILL OUTSTANDING.

If the offer does not dictate a time for acceptance, it must be accepted within a "reasonable time." *Valencia v. Garza*, 765 S.W.2d 893, 897 (Tex.App.—San Antonio 1989, no writ)(citing RESTATEMENT (SECOND) OF CONTRACTS § 41(1981)). What is reasonable depends on all the circumstances existing when the offer and attempted acceptance are made. *Id.* The circumstances to

---

[2] Additionally, Fleuriet's request that he deal directly with Defendant's insurance company was a term that materially varied and added to the terms of the offer by the Defendant's attorney, and thus was a counteroffer. As in *Gilbert*, where the party accepted a settlement offer with an additional condition that signing the settlement check constituted complete indemnity, no agreement to settle was formed as a matter of law. *Gilbert v. Pettiette*, 838 S.W.2d at 893 (reversing jury finding of enforceable contract).

be considered are "the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade." *Christy v. Andrus*, 722 S.W.2d 822, 824 (Tex. App.—Eastland 1987, writ re'f n.r.e.)(citing RESTATEMENT (SECOND) OF CONTRACTS § 41, cmt. b). "In general, the question is what time would be thought satisfactory to the offeror by a reasonable man in the position of the offeree." *Id.*

### A.    The purpose of the parties

The rational purpose of seeking to enter a settlement contract relatively early in the litigation confirms that the belated acceptance was not reasonable.  Common sense dictates that the purpose of offering a settlement is to avoid litigation expenses, deposition expenses, travel costs, and increased attorney's fees in seeking and responding to discovery and motions.  By September, when the offer was purportedly accepted, these costs had already been incurred and the purpose of entering a settlement agreement had been subverted.  "The purpose of the offeror ... will affect the time allowed for acceptance, if it is or should be known to the offeree. In such case there is no power to accept after it is too late to attain that purpose."  JOSEPH PERILLO, CORBIN ON CONTRACTS §2.16 (1997).  Mr. Sokolosky's power to accept the offer lapsed once the common sense purposes of the settlement could no longer be attained.

### B.    The progress of the litigation

The next most significant change in circumstance in the nine months between offer and alleged acceptance was the Court's granting of Ms. Liedman's Motion for Partial Summary Judgment, dismissing the claims of fraud and violation of the Texas Penal Code.  The offer pertained to a case that for all practical reasons, no longer existed after the Court dismissed a significant part of the suit on August 30, 2000.

## C.   The release of all claims

Ms. Liedman, after the purported acceptance on September 22, 2000, moved for summary judgment on Mr. Sokolosky's libel and slander claims based on the fact that Mr. Sokolosky had entered into a complete release of all claims against Ms. Liedman. *See* Defendant Lydia Liedman's Motion for Summary Judgment, filed October 10, 2000, at pp. 6-7.  The only response Plaintiff would make to this release defense was that the Court could not grant summary judgment because the case had settled. *See* Plaintiff Sokolosky's Response to Defendant Lydia Liedman's Motion for Summary Judgment, filed October 31, 2000, at p. 7. Should the Court find the there was no binding settlement agreement to settle the present case, the release issue resolves this case against Mr. Sokolosky.  Moreover, the existence of the release is pertinent to the circumstances when the purported acceptance was made.

Following Ms. Liedman's suit against Mr. Sokolosky in Cameron County, Texas for mismanagement of her aunt and uncle's finances, Ms. Liedman and Mr. Sokolosky entered into a settlement agreement and release of all claims. This agreement was dated May 26, 1998, and releases "any and all claims, demands, damages, actions, or causes of actions of whatsoever kind or nature, whether heretofore or hereafter accruing and whether now known or not known to the parties" that any of the parties might have against the other "directly or indirectly arising out of or relating to the Newmans, or their Estates, Trusts, or Powers of Attorney." In its order of August 30, 2000, this Court found that this agreement was not vitiated by fraud; thus the releases provided in the agreement are effective.

The undisputed evidence is that, as of the date of the release, May 26, 1998, Ms. Liedman had ceased all communications with Dow Jones & Co., Inc. and its agents.  Therefore, any claims Mr. Sokolosky had against her for statements made to Dow Jones accrued before the date of the release and are encompassed by its terms.  As Plaintiff Sokolosky had already released

Ms. Liedman for liability for any claims of any kind related to the prior course of conduct between the parties, his libel and slander claims should be dismissed at this time. At any rate, by September 22, 2000, the nature of Mr. Sokolosky's claims against Ms. Liedman had dramatically changed since the January 27, 2000 offer. Under those circumstances, it was unreasonable to think that the offer made when the claim was stronger was still in effect.

### D.     The practice of the profession

Finally, the evidence will show that the practice in the legal profession is to accept an offer in active litigation within a few weeks, and definitely before eight months, particularly when the parties are actively seeking discovery, filing dispositive motions, and approaching trial. *See* E. R. Fleuriet's letter of July 2, 1999 (referring to 30 days as "reasonable time" to settle this case). Given the progress of this litigation, the activities of the parties, and the passage of time, it is unreasonable to expect that the offer was still outstanding eight months after it was made.

### CONCLUSION

An application of Texas law to the largely undisputed facts before the Court shows that a binding agreement to settle this case was never formed. The offer of $100,000 was both withdrawn by the offeror and rejected by the offeree many months before the purported acceptance. Moreover, the material change in circumstances between the offer and acceptance proves that the acceptance was not made within a reasonable time.

Defendant respectfully requests that the Court hold that there is no binding settlement agreement and dismiss with prejudice Plaintiff's claim for breach of contract based on the settlement agreement and grant Defendant such other relief to which she might show herself justly entitled.

Respectfully submitted,

David H. Donaldson, Jr.
State Bar No. 05969700
Southern District No. 4891
Attorney-in-Charge
James A. Hemphill
State Bar No. 00787674
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
(512) 495-1400; (512) 499-0094 (Fax)

ATTORNEYS FOR DEFENDANT
LYDIA LIEDMAN

OF COUNSEL:

GEORGE & DONALDSON, L.L.P.
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 (Fax)

Norton A. Colvin, Jr.
Lecia L. Chaney
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
(956) 548-7441
(956) 541-2170 (Fax)

# CERTIFICATE OF SERVICE

This hereby certifies that a true and correct copy of the foregoing instrument has been served *via* hand delivery to counsel of record:

> E. R. "Randy" Fleuriet
> The Fleuriet Schell Law Firm L.L.P.
> 621 E. Tyler
> Harlingen, Texas 78550
> (956) 428-3030; FAX: (956) 421-4339

on the _8th_ day of _March_____, 2001.

David H. Donaldson, Jr.
James A. Hemphill