*179*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 8 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| EDWARD J. SOKOLOSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. B-98-131 |
| ) | |
| LYDIA LIEDMAN, ) | |
| ) | JURY DEMANDED |
| Defendant. ) | |

### DEFENDANT LYDIA LIEDMAN'S PROPOSED
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 8, 2001, the Court held a trial before the court on the issue of whether a binding settlement agreement had been entered into by the parties to this lawsuit. Upon consideration of the matters for which the court has taken judicial notice, the testimony, exhibits, and arguments of counsel, following are the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

1. This is a libel lawsuit originally filed in August of 1998 by Plaintiff Edward Sokolosky, against Defendants Dow Jones & Company, Inc. (publisher of *Barron's*) complaining of a story entitled "Nest Egg Cracked" that appeared in the July 6, 1998 issue of *Barron's*. Plaintiff Edward Sokolosky later amended his complaint to add Richard Karp, the author of the article, as a defendant. Plaintiff Edward Sokolosky also amended to add Lydia Liedman as a defendant based on her comments and communications to *Barron's*.

1

2. Until recently, Lydia Liedman was represented by attorney William Gault. Edward Sokolosky is represented by attorney E.R. "Randy" Fleuriet.

3. Attorneys Gault and Fleuriet conducted the settlement negotiations between Lydia Liedman and Edward Sokolosky over the claims Mr. Sokolosky was making against Ms. Liedman.

4. On May 27, 1999, Randy Fleuriet, on behalf of his client Edward Sokolosky, made an offer to Mr. Gault to settle Mr. Sokolosky's claims against Ms. Liedman for $1,295,000. Mr. Fleuriet's offer had a thirty-day time limit.

5. On December 13, 1999, Mr. Fleuriet renewed his settlement offer for $1,295,000 to Mr. Gault, indicating the settlement offer would be held open until January 31, 2000.

6. On January 27, 2000, Liedman's attorney, William Gault, made the following offer to Mr. Fleuriet:

> Thank you for your client's settlement offer in this case. In response, on behalf of Lydia Liedman, we are offering $100,000 to settle this case and will need an order of dismissal with prejudice and a full release and settlement of all claims. This offer is being made pursuant the Rule 68 of the Federal Rules of Civil Procedure.

7. This Court has previously observed in a Memorandum Opinion and Order dated December 13, 2000, that this letter did not meet the requirement of "Judgment" as contemplated by Rule 68 of the Federal Rules of Civil Procedure.

8. Rule 68 of the Federal Rules of Civil Procedure states in relevant part:

> At any time more than 10 days before trial begins, a party defendant against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and

thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn....

9. The January 27, 2000 settlement offer was made more than 10 days before the trial in this action was scheduled to begin. This was the only time this offer was made. It was never renewed.

10. William Gault, counsel for Defendant, intended that the January 27, 2000 offer be open for only ten days, as required by Federal Rule of Civil Procedure 68.

11. Counsel for Plaintiff, Randy Fleuriet, did not respond to the settlement offer in writing or otherwise within ten days.

12. Two weeks after the offer was made, on or about February 14, 2000, at a deposition held in Mr. Fleuriet's office, Mr. Fleuriet stated to Mr. Gault that he wanted to settle the case between Mr. Fleuriet's offer of settlement and Liedman's offer of $100,000. Mr. Fleuriet made clear that the settlement offer of $100,000 was not substantial enough.

13. Mr. Fleuriet also stated at that time that he wanted to negotiate the settlement directly with the insurance adjuster or with Chris Siemans of St. Paul Insurance Company. Mr. Fleuriet confirmed this request in a letter to Mr. Gault on October 5, 2000.

14. On September 22, 2000, Sokolosky's attorney, Randy Flueiret, wrote the following:

> My client, Edward Sokolosky, accepts your client's offer to settle this case at $100,000 as stated in your January 2000 letter, copy attached. You may prepare the order of dismissal with prejudice and the full release and settlement of all claims as stated in your letter and present those to me along with a draft for $100,000.

15. Mr. Fleuriet never attempted to accept the settlement offer in writing before September 22, 2000.

16. Between January 27, 2000 (when the offer was made) and September 22, 2000 (when the offer was purportedly accepted), the following events occurred in this litigation:

   A. Counsel for Defendant attended 31 depositions over 18 days in 8 different cities.

   B. Defendants filed expert reports on March 2, 2000.

   C. This Court held a hearing on Defendants' Motions for Summary Judgment on March 10, 2000.

   D. This Court granted a trial continuance per Plaintiff's request from May 2000 to February 2001.

   E. This Court granted partial summary judgment to Lydia Liedman, dismissing Plaintiff's fraud claims and Plaintiff's claims of violation of § 32.46 of the Texas Penal Code, on August 30, 2000.

   F. Also on August 30, 2000, this Court granted summary judgment to Defendant Dow Jones & Company, Inc., finding that the article in *Barron's* which was the subject of the libel claims against Dow Jones was not actionable libel because it was a substantially true account of a court proceeding.

17. The effect of the Court's grant of partial summary judgment dismissing Plaintiff's fraud claims and Plaintiff's claims of violations of § 32.46 of the Texas Penal Code was to vitiate any defense that Edward Sokolosky would have to Lydia Liedman's defense of release based on the release language from the settlement of the underlying lawsuit that was the subject of the Barron's story. The summary judgment order substantially reduced Lydia Liedman's exposure to any claims by Plaintiff Edward Sokolosky and

4

substantially changed the circumstances from those that existed when the January 27, 2000 settlement proposal of $100,000 was made.

18. Even if the partial summary judgment had not been granted, the passage of time and the events in the case outlined above show that there was no reasonable basis to believe that the January 27, 2000 settlement offer was still outstanding and available for acceptance on September 22, 2000.

19. On September 19, 2000, three days before Sokolosky's purported acceptance of the settlement offer, Defendant Dow Jones & Co., Inc. sent Plaintiff a motion for judgment under Rule 54(b) and a draft bill of costs in excess of $160,000.

20. The custom and practice of the legal profession in this area is to accept a settlement offer within a few weeks or less, particularly when litigation is active through taking of depositions, pursuing discovery, filing of motions and pleadings, and pending rulings on dispositive motions.

## CONCLUSIONS OF LAW

21. A settlement agreement is a contract governed by state substantive law—in this case, the law of Texas. *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986).

22. Under Texas law, the offeror, as master of the offer, can dictate the time, place, and manner of acceptance of the offer. *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1986, no writ); *Lone Star Gas v. Coastal States Gas Producing Co.*, 388 S.W.2d 251, 253 (Tex.App.—Corpus Christi 1965, no writ). The offeree is required to accept in the precise manner dictated in the offer; when the offer prescribes a time for acceptance, its terms must be followed precisely to create a contract.

*Town of Lindsey v. Cooke County Elec. Coop. Assoc.*, 502 S.W.2d 117, 118 (Tex. 1973); *Abraham Investment Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 525 (Tex.App.—Amarillo 1998, writ denied).

23. A separate paper or document can be incorporated by reference in an agreement. *Castroville Airport v. City of Castroville*, 974 S.W.2d 207, 211 (Tex.App.—San Antonio 1998, no writ). The express language used in the agreement is not important provided the agreement plainly refers to the other writing. *Id.* When a contract is made with reference to the performance of certain acts prescribed by a rule, the contract and the rule will be considered together and "the statute will become part of the contract." *Overton v. City of Houston*, 564 S.W.2d 400, 403 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

24. Mr. Gault's reference to Rule 68 in his January 27, 2000 letter was sufficient to incorporate by reference the ten-day time limit in Rule 68 on his offer, even if the letter itself was not sufficient to make the offer effective to qualify for the protections afforded under Rule 68. As master of the offer, Mr. Gault, in his letter, set a condition for any acceptance that it be made within the 10 day limit. Because the offer was not accepted within the ten-day time limit, the offer lapsed and no contract was formed.

25. Under Texas law, an offer may be revoked or withdrawn by the offeror at any time prior to acceptance by the offeree. *Bowles v. Fickas*, 167 S.W.2d 741, 743 (Tex. 1943). By placing the reference to Rule 68 (and its ten day limitation on acceptance) in his offer letter, Mr. Gault provided, in effect, that the offer was withdrawn or revoked if not accepted within ten days. In addition, even if the offer letter itself and the passage of time without acceptance was not sufficient to revoke the offer, the other events had the

legal effect of a revocation. Revocation can be made expressly, or through conduct inconsistent with the offer. *Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947). A written offer can be withdrawn or revoked through oral communications. *See e.g. Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947); *Echols v. Bloom*, 485 S.W.2d 798, 800 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

26. Mr. Gault withdrew the $100,000 offer before acceptance by Mr. Fleuriet. By operation of Rule 68, the offer was expressly withdrawn ten days after it was made. His conduct (and that of Mr. Fleuriet) by pursuing depositions and litigation was conduct inconsistent with the continuation of the offer. Because the offer was withdrawn before acceptance, no contract was formed.

27. Under Texas law, acceptance must be identical to the offer to make a binding contract. *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). A material change in a proposed contract constitutes a counter-offer. *Id.*. A counteroffer acts as a rejection of the offer. *Id.* ("An acceptance must not change the terms of an offer; if it does, the offer is rejected.").

28. A counteroffer to a written offer can be made orally; under Texas law, oral offers are valid to the same extent as written offers. *Trinity Universal Ins. Co. v. Bleeker*, 944 S.W.2d 672, 675 (Tex.App—Corpus Christi 1997) *rev'd on other grounds*, 966 S.W.2d 489; *see also* E. ALLAN FARNSWORTH, CONTRACTS § 3.10 (1999) (an offer "may be made by spoken or written words or by other conduct"). A verbal counteroffer and rejection of a written offer is permitted. *See, e.g., CRSS Inc. v. Runion*, 992 S.W.2d 1, 5 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

29. Mr. Fleuriet's oral statement that he wanted to negotiate a settlement between Mr. Gault's offer of $100,000 and Mr. Fleuriet's initial offer of $1.295 million was a counteroffer. Thus, it acted as a rejection of the $100,000 offer by Mr. Gault. Because Mr. Gault's offer was rejected, no contract was formed. Mr. Gault never renewed the offer, so it was not outstanding on September 22, 2000 when Mr. Fleuriet purported to "accept" it.

30. If the offer does not dictate a time for acceptance, it must be accepted within a "reasonable time." *Valencia v. Garza,* 765 S.W.2d 893, 897 (Tex.App.—San Antonio 1989, no writ)(citing RESTATEMENT (SECOND) OF CONTRACTS § 41(1981)). What is reasonable depends on all the circumstances existing when the offer and attempted acceptance are made. *Id.* (citing same). The circumstances to be considered are "the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade." *Christy v. Andrus*, 722 S.W.2d 822, 824 (Tex. App.—Eastland 1987, writ re'f n.r.e.)(citing RESTATEMENT (SECOND) OF CONTRACTS § 41, comment b). "In general, the question is what time would be thought satisfactory to the offeror by a reasonable man in the position of the offeree." *Id.* (citing same).

31. Mr. Fleuriet's purported acceptance, nine months after the offer was made, was not made within a reasonable time. The circumstances of the litigation would lead a reasonable person in Mr. Fleuriet's position to believe that the offer would have expired. First, the nature of the contract—a settlement offer in very active litigation—is one that ordinarily must be accepted within a short amount of time. Second, the circumstances between when the offer was made and it was accepted were dramatically different: this court had granted a partial summary judgment to Lydia Liedman and dismissed Dow

8

Jones & Company, Inc. and the parties had taken numerous depositions, designated experts, obtained trial continuances, and incurred more costs in discovery. Third, the customary practice of the legal profession is to accept an offer within a few weeks, at least before nine months had passed. Because the offer was not accepted within a reasonable time, no contract was formed.

32. As Plaintiff has not established a breach of contract, Plaintiff is not entitled to attorney's fees under Texas Civil Practice and Remedies Code § 38.001 *et seq*.

33. As the prevailing party, Lydia Liedman is entitled to recover her costs attributable to this proceeding before the Court.

34. Any finding of fact that should be considered a conclusion of law is so considered; any conclusion of law that should be considered a finding of act is so considered.

Dated this _____ day of March, 2001.

_____
The Honorable John Black
United States Magistrate Judge

9

                                            Respectfully submitted,

*/s/ David H. Donaldson*
David H. Donaldson, Jr.
State Bar No. 05969700
Southern District No. 4891
Attorney-in-Charge
James A. Hemphill
State Bar No. 00787674
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
(512) 495-1400; (512) 499-0094 (Fax)

ATTORNEYS FOR DEFENDANT
LYDIA LIEDMAN

OF COUNSEL:

GEORGE & DONALDSON, L.L.P.
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 (Fax)

Norton A. Colvin, Jr.
Lecia L. Chaney
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
(956) 548-7441
(956) 541-2170 (Fax)

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

This hereby certifies that a true and correct copy of the foregoing instrument has been served *via* hand delivery to counsel of record:

>E. R. "Randy" Fleuriet
>The Fleuriet Schell Law Firm L.L.P.
>621 E. Tyler
>Harlingen, Texas 78550
>(956) 428-3030; FAX: (956) 421-4339

on the 8th day of March, 2001.

*David H. Donaldson*
David H. Donaldson, Jr.
James A. Hemphill

11